# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID S. SAHAGUN,<br><br>                    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>                    Defendant. | Case No. 18-cv-02119-BAS-RBM<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15);**<br><br>**(2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16); AND**<br><br>**(3) REMANDING ACTION FOR FURTHER PROCEEDINGS** |

      Plaintiff David S. Sahagun seeks judicial review of a final decision by the Commissioner of Social Security[1] denying his application for benefits under Title XVI of the Social Security Act ("the Act"). Presently before the Court are the

---

[1] The Court substitutes Commissioner of Social Security Andrew M. Saul in place of the former official, Acting Commissioner of Social Security Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d)(1).

– 1 –

parties' cross-motions for summary judgment. The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, (ECF No. 15), and **DENIES** the Commissioner's Cross-Motion for Summary Judgment, (ECF No. 16). The Court will remand this matter to the Social Security Administration for further proceedings.

I. **ADMINISTRATIVE AND FACTUAL BACKGROUND**

Plaintiff filed an application for supplemental security income in October 2014, alleging the medical impairments of prostate cancer, depression, high cholesterol, and high blood pressure. (AR 157, 176.) Plaintiff alleged that his disability began in September 2014. (AR 157.) In a function report dated November 8, 2014, Plaintiff reported fatigue, difficulty concentrating, and limited mobility. (AR 193.) In February 2015, after reviewing medical records and ordering a psychological assessment that diagnosed Plaintiff with a major depressive disorder, (AR 321), the Social Security Administration denied Plaintiff's application. (AR 70.)

In March 2015, Plaintiff underwent a laparoscopic radical prostatectomy to treat prostate cancer. (AR 428.) Subsequent checkups did not indicate any serious complications from the surgery. (AR 435, 443.) In September 2015, Plaintiff requested reconsideration of his application. (AR 108.) Soon after requesting reconsideration, Plaintiff was diagnosed with degenerative disk disease and began physical therapy and pain management treatment. (AR 332.) In February 2016, the Administration upheld its initial decision, denying Plaintiff's application for a second time. (AR 82.) Plaintiff immediately requested a hearing and review by an Administrative Law Judge ("ALJ"). (AR 115.)

ALJ Donald Cole conducted a hearing in Plaintiff's case on July 6, 2016. (AR 20.) At the hearing, Plaintiff alleged that his daily activities were substantially limited by a combination of depression and back pain. (AR 43–49.) A vocational expert also testified at the hearing, stating that there were jobs available in a significant number in the economy for a hypothetical person of Plaintiff's age, education, and work experience—who was also limited to light work with standard industry breaks and some additional physical, psychological, and social restrictions. (AR 56.) The vocational expert further testified that if, in addition to the abovementioned limitations, the hypothetical person was off-task for more than an hour a day or would typically miss two days of work a month, there would be no work available for a person with those limitations. (AR 57.)

At the time of the hearing, the Administration had ordered but had not yet received additional medical records from Plaintiff's treating physicians. (AR 240, 243.) These records included brief psychological evaluations by Plaintiff's treating physicians, as well as information about Plaintiff's prostatectomy and degenerative disk disease. (*See id.*; *see also* AR 26–29.) After receiving and reviewing these records, the ALJ issued a decision on January 10, 2017, finding Plaintiff was not disabled under the meaning of the Act. (AR 87.)

In March 2017, Plaintiff filed an appeal request. (AR 146.) Along with the request, Plaintiff submitted two mental impairment questionnaires, one signed by Nurse Practitioner Elizabeth Dewart and the other signed by Doctor Raul Gener. (AR 529–40.) Both N.P. Dewart and Dr. Gener had treated Plaintiff beginning in 2016. (AR 529, 537.) The Appeals Council considered the new evidence—making the evidence part of the record—but ultimately denied review of Plaintiff's case on April 13, 2017. (AR 15–19.)

On June 12, 2018, stating that it had committed a legal error, the Appeals Council set aside its previous decision and granted review of Plaintiff's case to consider additional information. (AR 152–55.) Plaintiff, who had recently retained

an attorney, submitted additional medical records from Paradise Valley Hospital, records from Operation Samahan Health Clinic, and evidence from Dr. Manuel Puig-Llano and Dr. Erick Alayo for the Appeals Council to consider. (AR 541–640.)

The Appeals Council issued its final decision on July 23, 2018. (AR 4–7.) In its decision, the Appeals Council evaluated the ALJ's decision and considered the additional evidence that Plaintiff submitted around July 12, 2018. (AR 4.) The Appeals Council found that the new evidence did not have a reasonable probability of changing the outcome of the decision. (*Id.*) It then adopted the ALJ's findings and conclusions and held that Plaintiff was not disabled under the meaning of the Act. (AR 7.)

## II. LEGAL STANDARD

Under 42 U.S.C. §§ 405(g) & 1383(c), an applicant for social security disability benefits may seek judicial review of a final decision of the Commissioner in federal district court. "As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). When reviewing whether the Commissioner's determination is supported by substantial evidence and free of error, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir 1998)).

## III. STANDARD FOR DETERMINING DISABILITY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act's implementing regulations, the Commissioner applies a five-step sequential evaluation process to determine whether an applicant for benefits qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."[2] 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the Commissioner proceeds to step two.

At step two, the Commissioner must determine whether the claimant has a severe medical impairment, or combination of impairments, that meets the duration requirement in the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments is not severe, or does not meet the duration requirement, the claimant is not disabled. If the impairment is severe, the analysis proceeds to step three.

At step three, the Commissioner must determine whether the severity of the claimant's impairment or combination of impairments meets or medically equals the severity of an impairment listed in the Act's implementing regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

---

[2] "Substantial gainful activity" is work activity that (1) involves significant physical or mental duties and (2) is performed for pay or profit. 20 C.F.R. § 404.1510.

At step four, the Commissioner must determine whether the claimant's residual functional capacity ("RFC")—that is, the most he can do despite his physical and mental limitations—is sufficient for the claimant to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The Commissioner assesses the RFC based on all relevant evidence in the record. *Id.* § 416.945(a)(1), (a)(3). If the claimant can perform his past relevant work, he is not disabled. If not, the analysis proceeds to the final step.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also id.* § 404.1520(g)(1). The Commissioner usually meets this burden through the testimony of a vocational expert, who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). If the claimant is able to perform other available work, he is not disabled. If the claimant cannot make an adjustment to other work, he is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## IV. COMMISIONER'S FINDINGS

In Plaintiff's case, the final agency decision on review is that of the Appeals Council. (AR 1.) However, because the Appeals Council adopted the findings and conclusions of the ALJ, (AR 4–5), the Court first examines the ALJ's findings directly.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date on which he filed his application for disability benefits. (AR 89.) At step two, the ALJ found that Plaintiff suffered from degenerative disk disease, depression, and anxiety—all severe impairments that more than minimally limited his ability to do basic work activities. (*Id.*) The ALJ found that Plaintiff had

– 6 –

recovered well from his prostatectomy and was not suffering from any lasting effects that would cause a severe impairment. (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not match the severity of any of the listed impairments in 20 C.F.R. § 404.1520(a)(4)(iii). (AR 90.) At step four, the ALJ determined that Plaintiff had the RFC to perform light work, with standard industry breaks every two hours and some additional physical, psychological, and social restrictions. (AR 91.)

To reach his step four conclusions, the ALJ considered Plaintiff's physical and psychological limitations. The ALJ supported his conclusions about Plaintiff's physical limitations by relying on Plaintiff's testimony and his 2015–2016 treatment records. (AR 92.) Plaintiff's x-rays from November 2015 reveal mild chronic disk degeneration without acute findings (AR 332), and a CT scan in March 2016 showed evidence of degenerative disc disease, (AR 397). Treatment notes from November 2015 state that Plaintiff was experiencing "mild back pain." (AR 334.) After several physical therapy sessions, Plaintiff's physical therapist reported overall improvement of his lower quadrant range of motion, good rehabilitation potential, and a positive response to treatment. (AR 519.) However, the records also indicate that in late 2016 Plaintiff continued to report severe pain and difficulty with prolonged postures. (*See, e.g.*, AR 454, 519.)

The ALJ made findings regarding Plaintiff's psychological limitations based on an evaluation conducted by examining physician Beth Teegarden in January 2015, and treatment notes by physicians Mohammed Ahmed and Ernest De Guzman from 2016. (AR 93.) Dr. Teegarden diagnosed Plaintiff with major depressive disorder and bereavement. (AR 321.) She found him to be moderately limited in his ability to follow detailed instructions, respond to work pressure, and respond to changes. (*Id.*) Dr. Teegarden also found Plaintiff to be mildly limited in his ability to comply with work rules such as attendance, comply with simple instructions, and interact with others. (*Id.*) Notably, Dr. Teegarden assessed Plaintiff well before he

– 7 –

18cv2119

was diagnosed with degenerative disk disease and two years before the ALJ's decision. (*See* AR 87, 317.)

Plaintiff's treating physicians also diagnosed Plaintiff with major depressive disorder. (AR 458, 467.) Dr. Ahmed's evaluation in June 2016 indicated that Plaintiff's thought process was within normal limits and that his coping skills were good. (AR 467.) Dr. Ahmed noted that Plaintiff's back pain was being controlled with medication. (*Id.*) Dr. De Guzman's evaluation in August 2016 found that Plaintiff's thought process was intact and his attention was good, but that Plaintiff was frustrated by pain. (AR 451–52.) Neither Dr. De Guzman nor Dr. Ahmed opined about the extent of the limitations created by Plaintiff's health issues.

At his hearing before the ALJ, Plaintiff testified that he was unable to stand for more than one hour a day, (AR 43), that he rarely had social interactions, (AR 49–50), and that he had difficulty focusing and remembering, (AR 48). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he described, Plaintiff's statements about the limiting effects of his alleged symptoms were not entirely consistent with the medical record. (AR 92.)

Relying on the medical record and accounting for Plaintiff's testimony, the ALJ found that Plaintiff had an RFC for light work as defined by 20 C.F.R. § 416.967(b),

> except the claimant is limited to: occasional climbing of stairs and ramps and occasional balancing, stooping, kneeling, crouching, and crawling, but no climbing of ladders/ropes/scaffolding; limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours; no interaction with the general public and limited to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product.

(AR 91.) The ALJ concluded his decision by stating that "no treating source opined the claimant has symptoms or limitations inconsistent with the residual functional capacity assessment set forth above." (AR 94.)

Because Plaintiff had no past relevant work history, the ALJ proceeded to step five. (AR 95.) Based on the testimony of the vocational expert, the ALJ determined that a person of Plaintiff's RFC, age, education, and work experience would be able to work as an assembler (DOT 729.687-010) or a solderer (DOT 813.684-022).[3] (AR 95–96.) Because there were jobs available that Plaintiff could perform, the ALJ determined that Plaintiff was not disabled between October 2014 and the date of the decision. (AR 96.)

On review, the Appeals Council "adopt[ed] the ALJ's findings and conclusions regarding whether the claimant was disabled." (AR 4–5.) The Appeals Council noted that the mental listings used by the Commissioner had been revised after the ALJ issued its decision. (AR 5.) Because of this change, the Appeals Council laid out its own mental impairment findings. (*Id.*) Based on its review, the Appeals Council found that Plaintiff had "mild limitations in [his] ability to understand, remember or apply information; moderate limitations in [his] ability to concentration [sic], persist, or maintain pace; and moderate limitations in [his] ability to adapt or manage [him]self." (*Id.*) The Appeals Council stated that its mental impairment findings were consistent with the ALJ's RFC assessment, which it upheld. (*Id.*)

During its review, the Appeals Council accepted a statement and additional evidence from Plaintiff. (AR 4.) The Appeals Council reviewed the evidence but did not find a reasonable probability that it would change the outcome of the

---

[3] The ALJ's decision incorrectly listed the DOT code for assembler as "211.462-010." (AR 96.) However, the transcript shows that the vocational expert correctly stated the DOT code for assembler as "729.687-010," (AR 56), and the Appeals Council addressed and corrected the ALJ's error in its decision, (AR 4–5).

– 9 –

decision. (*Id.*) However, the Commissioner recognizes in his motion that the Appeals Council did not acknowledge the Dewart or Gener reports in its decision. (Def.'s Mot. 5:10–11.) As noted above, these reports were submitted prior to the Appeals Council's first decision, which was later set aside.

## V. ANALYSIS

### A. Failure to Review the Gener and Dewart Reports

In his Motion for Summary Judgment, Plaintiff argues that the Appeals Council committed a reversible error by improperly rejecting the reports by N.P. Dewart and Dr. Gener. (Pl.'s Mot. 6:23–25.) To evaluate whether the Appeals Council erred, the Court must first analyze the requirements that apply when the Appeals Council considers a request for review involving additional evidence.

The Appeals Council should grant review of an ALJ decision if a claimant presents additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). When the Appeals Council receives a request for review that contains new evidence, it may choose between two options. First, it may "view" the evidence and then send the claimant an official notice rejecting the evidence for a valid reason. *Id.* § 404.970(c).[4] Alternatively, the Appeals Council may "consider" the evidence as part of its decision-making process, incorporating the evidence into the official record regardless of whether or not it grants review. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012).

---

[4] 20 C.F.R. § 404.970(c) permits the Appeals Council to reject additional evidence if the claimant did not have good cause for his delay in producing the new evidence, or if the documents do not relate to the period on or before the date of the ALJ's hearing decision. In such cases, the Appeals Council must send a notice advising the claimant it did not accept the evidence and explaining how the evidence may be used to file a new claim.

In *Taylor v. Commissioner of Social Security Administration*, the Ninth Circuit considered a case where the Commissioner failed to address additional documents submitted directly to the Appeals Council. 659 F.3d 1228 (9th Cir. 2011). The plaintiff submitted additional medical opinions with a request for review, but the Appeals Council rejected his appeal as untimely. *Id.* at 1231. The Appeals Council later set aside its first decision, and considered the plaintiff's appeal anew, but ultimately denied review. *Id.* In doing so, the Appeals Council failed to offer a reason for rejecting an additional medical opinion that plaintiff had submitted with his first appeal request. *Id.* at 1232.

The Ninth Circuit noted that the Appeals Council was not required to make any "particular evidentiary finding" when faced with "new evidence." *Id.* at 1232 (interpreting *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)). However, the Ninth Circuit still remanded the case, holding that where the Appeals Council fails to address material additional evidence *at all* it commits reversible error. *See id.* at 1233. *Taylor*'s holding indicates that the Appeals Council is not required to give specific reasons for rejecting additional evidence, but it has a duty, at minimum, to view and acknowledge existence of the additional evidence. *See id.*

In comparison, ALJs may only reject the opinion of an uncontradicted treating medical source for "clear and convincing reasons" and may only reject contradicted treating sources for "specific and legitimate reasons." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). These reasons must be supported by "substantial evidence." *Id.* Plaintiff asks the Court to apply this same standard to the Appeals Council's review of additional information. (Pl.'s Mot. 6: 23–25.) In light of *Taylor*, however, it is unclear whether this standard applies to additional information on review before the Appeals Council. *See* 659 F.3d at 1232–33; *see also Palomares v. Astrue*, 887 F. Supp. 2d 906, 914–16 (N.D. Cal. 2012); *Warner v. Astrue*, 859 F. Supp. 2d 1107, 1113 (C.D. Cal. 2012) (reviewing Ninth Circuit precedent on the issue of whether the same review standards apply to Appeals Council review of

– 11 –

18cv2119

additional documents and finding the precedent inconclusive).

Regardless, as Plaintiff notes in his brief, the Appeals Council neglected to make a valid written response to the Gener and Dewart reports. (Pl.'s Mot. 18:4.) Plaintiff submitted the reports before the Appeals Council made its 2017 decision denying review. (AR 16, 18.) In its 2017 decision, the Appeals Council considered the reports but dismissed them as immaterial to the outcome of the claim. (AR 16.) However, when the Appeals Council set aside its 2017 decision based on legal error, it also set aside its response to the Gener and Dewart reports, thus reviving its obligation to respond to them in a subsequent action. *See Taylor*, 659 F.3d at 1232–33 (illustrating that when the Appeals Council sets aside its decision denying review, it has an obligation to acknowledge documents submitted prior to the first decision).

In its 2018 decision, the Appeals Council referenced and dismissed 100 pages of new evidence but, as in *Taylor*, the Appeals Council did not acknowledge the previously-submitted Gener and Dewart reports. (AR 4.) There is also no record of a rejection notice sent to Plaintiff by the Appeals Council under 20 C.F.R. § 404.970(c). Regardless of whether the Appeals Council had a duty to give elaborate reasons or make a simple conclusory rejection, it did not meet even the minimal burden of acknowledging the existence of the additional evidence. By failing to address the reports either through written rejection or a valid decision, the Appeals Council committed a legal error. *See Taylor*, 659 F.3d at 1233 (holding that the Appeals Council's failure to acknowledge new evidence through a valid rejection or a decision was a legal error requiring remand); *accord Hernandez v. Berryhill*, No. 1:17-cv-00483-SKO, 2018 WL 2021021, at *6 (E.D. Cal. May 1, 2018); *Ruth v. Berryhill*, No. 1:16-CV-0872-PK, 2017 WL 4855400, at *10 (D. Or. Oct. 26, 2017).

### B. Harmless Error Analysis

The Appeals Council's failure to address the Dewart and Gener reports is a legal error, but that does not necessarily mean that the Court must reverse the

Commissioner's decision. The Ninth Circuit has recognized that the doctrine of "harmless error applies in the Social Security context." *Stout*, 454 F.3d at 1054. Reversal is not called for if a mistake is nonprejudicial, is irrelevant to the determination, or occurs during an unnecessary procedural step. *Id.* at 1055. The standard for harmless error remains deferential to the Commissioner, and a district court should uphold the decision if the error is "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

If excluding the Gener and Dewart reports was "inconsequential to the ultimate nondisability determination," then the Court is not required to reverse. *See Molina*, 674 F.3d at 1115. The Court therefore considers the record as a whole, including the weight and contradictory nature of the additional evidence, to determine whether the Appeals Council's error was outcome-affecting. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). In doing so, the Court keeps in mind that "[a]s a general rule, where the 'critical portions' of a treating physician's discredited opinion were presented for the first time to the Appeals Council, '[t]he appropriate remedy . . . is to remand th[e] case to the ALJ' to consider the additional evidence." *Gardner v. Berryhill*, 856 F.3d 652, 657–58 (9th Cir. 2017) (quoting *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)).

### 1. Weight of the Evidence

Under the Ninth Circuit's "treating physician rule," the opinion of a treating physician receives the "greatest weight." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The Commissioner should also assign weight to opinions based on the "length, nature, and extent of the treatment relationship; frequency of examination; supportability; and consistency with the overall record." *Fleenor v. Berryhill*, 752 F. App'x 451, 452 (9th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c)(2)–(6); *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding

– 13 –

that the ALJ committed a reversible error by discounting a medical opinion without weighing these factors); *Garrison*, 759 F.3d at 1013 (holding that medical opinions that were presented in a check-box form were still entitled to weight because they were "based on significant experience" and "supported by numerous records").

The Commissioner may only disregard an uncontradicted treating physician's testimony for "clear and convincing reasons . . . supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. If the opinion is contradicted by another doctor, the Commissioner must still provide "specific and legitimate reasons . . . supported by substantial evidence" before rejecting the opinion. *Id.* There are many legitimate reasons for disregarding a treating physician's testimony, including that the opinion is clearly biased, conclusory, or unsupported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### 2. N.P. Dewart Report

Excluding N.P Dewart's report was not a harmless error. The Dewart report is material, it expresses the opinion of a valid medical source, and it contradicts the Commissioner's RFC findings.

First, N.P Dewart's report is material. N.P. Dewart had a history of treating Plaintiff and was operating within her specialty as a psychiatric nurse practitioner, which gave her great familiarity with Plaintiff's condition. (AR 529.) Her report is not conclusory; it provides details and references information about Plaintiff's ongoing treatment. (AR 529–533.) The report also relates to the time period relevant to the disability determination. (*Id.*) Furthermore, her report is backed up by reference to medical findings made by Dr. De Guzman, which are part of the administrative record. (AR 529–33; *see also*, *e.g.*, AR 451, 457, 547–48, 598, 618–19, 627–28, 633–34.)

Second, N.P Dewart is a valid medical source, either as an "acceptable" or an "other" medical source. A report from a nurse practitioner acting alone does not

– 14 –

receive the same weight given to a report by a treating physician. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016) (noting nurse practitioners are "other" sources under 20 C.F.R. § 404.1513(a) and the ALJ may discount their opinions by giving germane reasons for doing so). However, N.P. Dewart's report indicates that she worked with one of Plaintiff's primary treating physicians, Dr. De Guzman (AR 529), and that she reviewed Dr. De Guzman's documentation and charts prior to filling out the report, (AR 531). The Ninth Circuit allows nurse practitioners operating under the close supervision of a treating physician to be treated as agents of the physician and therefore as acceptable medical sources. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (citing *Gomez*, 74 F.3d at 971).[5]

N.P. Dewart appears to be an "acceptable" medical source, but even if she was an "other" source, the Commissioner would still be required to provide germane reasons for discounting her report. *See Popa v. Berryhill*, 872 F.3d 901, 906–07 (9th Cir. 2017) (suggesting that a nurse's medical opinions should not receive "reduced weight" when she had provided primary treatment for 18 months and holding that the ALJ could not reject the opinion of an "other source" simply because it was a check-box form).

Finally, N.P. Dewart's report contradicts the ALJ's findings. The Commissioner suggests that even if the Dewart report had been considered and properly weighed by the Appeals Council, it would not have affected the disability determination because N.P. Dewart's opinions were accommodated in the ALJ's

---

[5] In 2012, the Ninth Circuit acknowledged that in finding nurse practitioners were valid sources, it "relied in part on language in" a now-repealed section of 20 C.F.R. § 416.913(a)(6), which states that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Molina*, 674 F.3d at 1111 n.3. However, the Ninth Circuit has also found that nurse practitioners are a valid medical source based on agency theory. *Gomez*, 74 F.3d at 971. In recent years, the Ninth Circuit has repeatedly declined to address the validity of *Gomez*. *Britton*, 787 F.3d at 1013 n.4; *Colburn v. Berryhill*, 694 F. App'x 582, 583 (9th Cir. 2017). Therefore, the Court continues to rely on *Gomez* as valid precedent.

– 15 –

RFC findings. (Def.'s Mot. 8:1–3.) The Court disagrees. N.P. Dewart indicated that Plaintiff's depression and grief exacerbate ongoing chronic pain. (AR 531.) She estimated that Plaintiff's health conditions resulted in "marked limitations in his ability to complete a workday without interruptions from psychological symptoms" and to "[p]erform at a consistent pace without rest periods of unreasonable length or frequency." (AR 532.) A marked limitation would interfere with Plaintiff's ability to perform basic work activities more than two thirds of an eight hour workday. (*Id.*)

This opinion contradicts the ALJ's RFC finding that Plaintiff could work a consistent schedule with only standard industry breaks every two hours. (AR 91.) In fact, during the hearing before ALJ Cole, a vocational expert testified that a person with Plaintiff's characteristics who was off-task for more than one hour a day would not be employable. (AR 57.) The Dewart report also contradicts the Appeals Council's mental capacity findings, which assessed that Plaintiff had only "moderate limitations in the ability to concentration [sic], persist, or maintain pace." (AR 5.)

In sum, N.P. Dewart's report is material and is the opinion of a valid medical source. The Commissioner would, at the least, have been required to provide germane reasons for rejecting the report. Because N.P. Dewart's report contradicts the ALJ's and the Appeals Council's findings, the Appeals Council's oversight in failing to acknowledge the report is a harmful error.

### 3.  Dr. Gener Report

The exclusion of Dr. Gener's report is also not a harmless error. Dr. Gener is a treating medical source who had several prior encounters with Plaintiff. (AR 537.) Despite opining that he lacked knowledge as to several factors on the check-box evaluation form, Dr. Gener reported treating Plaintiff on a monthly basis, and his report references information about Plaintiff's ongoing treatment within the time period under consideration. (*Id.*; *see also, e.g.*, AR 455–56, 611–12, 615–16, 622–23, 631.) Because Dr. Gener is a treating physician and his report is not conclusory,

his report would have been entitled to significant weight. *See Garrison*, 759 F.3d at 1013. The Commissioner could not reject Dr. Gener's opinion without providing specific and legitimate reasons supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216.

Dr. Gener's report contradicts the ALJ and the Appeals Council's findings. Dr. Gener reported that Plaintiff suffered from recurring panic attacks and that he had "moderate to marked" limitations in his ability to "maintain attention and concentrate for extended periods." (AR 538–39). A moderate to marked limitation would interfere with Plaintiff's ability to perform activities one third to two thirds of an eight-hour workday. Dr. Gener's medical opinion suggests that Plaintiff would likely not be employable in a role with only standard industry work breaks every two hours.

Thus, Dr. Gener's report is material, relates to the period at issue, and is entitled to significant weight. It could not be rejected absent a specific and legitimate reason supported by substantial evidence. Because Dr. Gener's report contradicts the ALJ's RFC findings, the Appeals Council's failure to acknowledge the report was a harmful error.

**C. Remedy**

Having concluded the Commissioner committed harmful legal error, the Court must determine the appropriate remedy. "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record, and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099–100. That the ALJ did not have an opportunity to consider material evidence because it was presented for the first time

– 17 –

to the Appeals Council is yet another reason to conclude that further proceedings is an appropriate remedy. *See Gardner*, 856 F.3d at 657–58.

Plaintiff initially argues that the appropriate remedy is to remand under the traditional "credit as true" rule for the immediate award of benefits. (Pl.'s Notice of Mot. 2:1–2.) However, Plaintiff also recognizes that the record is not entirely developed, and that it is not "fully clear whether crediting [the] opinion[s] would warrant a finding of disability." (Pl.'s Mot. 9: 2–5.) Plaintiff argues in the alternative that if the Court remands for further proceedings, it should order the Commissioner to credit as true the Dewart and Gener reports. (*Id.*)

The traditional credit as true test has three requirements. *Garrison*, 759 F.3d at 1019–21. First, the court must determine that the Commissioner committed legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016). Second, if the court finds such error, it must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. If the court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the court must finally consider whether the Commissioner "would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). If all three steps are met, the district court may, but is not required to, remand for an award of benefits. *Id.* The court may choose to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled. *Id.* at 1021.

Under the version of the credit as true rule requested by Plaintiff in the alternative, the Court would remand for further proceedings but would instruct the ALJ to "credit as true" the improperly rejected testimony. (Pl.'s Mot. 9:3–7.) This instruction is punitive and is generally reserved for circumstances where administrative errors have unnecessarily delayed a decision for a plaintiff of advanced age. *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009);

– 18 –

*Hammock v. Bowen*, 879 F.2d 498, 503–04 (9th Cir. 1989). This instruction may be given even if the record is not fully developed and it is not clear that the plaintiff is disabled. *Hammock*, 879 F.2d at 504.

In Plaintiff's case, there is clear legal error, but the record has not been fully developed, and it is not clear from the existing record that the ALJ would be required to find Plaintiff disabled on remand if the improperly unacknowledged medical opinions were credited as true. *See Dominguez*, 808 F.3d at 407.

First, because neither the Appeals Council nor the ALJ properly addressed the Gener and Dewart reports, further administrative proceedings would allow the Administration to consider the reports in light of the existing record, and to further develop the record if necessary. The Ninth Circuit has held that in cases with outstanding issues, additional evidence "'may well prove enlightening' in light of the passage of time[.]" *Treichler*, 775 F.3d at 1101 (quoting *INS v. Ventura*, 537 U.S. 12, 18 (2002)). On remand, the Administration may choose to have Plaintiff undergo a new psychological exam, since the passage of time and the development in Plaintiff's degenerative disk disease may render the January 2015 exam by Dr. Teegarden relatively unhelpful.

Second, "[i]n cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," courts "consistently have remanded for further proceedings rather than payment of benefits." *See Harman*, 211 F.3d at 1180; *see also, e.g.*, *Graham v. Colvin*, No. C14-5311BHS, 2015 WL 509824, at *7 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings where there was a "lack of vocational expert testimony based on the limitations" contained in improperly discredited evidence). Here, the vocational expert was asked about a hypothetical person who had all the limitations of Plaintiff's RFC, and the additional limitation of being off-task for at least one extra hour a day. (AR 57.) While this hypothetical could be consistent with the unacknowledged medical opinions, the ALJ may find it helpful to request the

– 19 –

testimony of a new vocational expert who can consider Plaintiff's limitations more accurately. *See Harman*, 211 F.3d at 1180. In fact, as mentioned, Plaintiff himself acknowledges that there is an "absence of vocational evidence" and that "further administrative proceedings" are necessary. (Pl.'s Mot. 9:3–4.)

Accordingly, the Court declines to remand for benefits based on the traditional credit as true rule. It also declines to remand with an order that the Commissioner credit as true the Dewart and Gener reports. The Ninth Circuit has previously held that such instructions can be appropriate where the plaintiff is of "advanced age" and has already suffered "severe delays" in his application. *See Vasquez v. Astrue*, 572 F.3d at 593–94. Although Plaintiff has reached an advanced age (he is 56 years old),[6] the record does not contain enough evidence of severe delays caused by the Administration to merit a "credit as true" order.

In sum, in exercising its discretion under 42 U.S.C. § 1383(c), the Court declines to depart from the ordinary remand rule in this case.

## VI. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 15) and **DENIES** the Commissioner's Cross-Motion for Summary Judgment (ECF No. 16). The Court **REMANDS** this action for further proceedings consistent with this order. *See* 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED: June 28, 2019**

Hon. Cynthia Bashant
United States District Judge

---

[6] Pursuant to 20 C.F.R. § 404.1563(e), the Administration categorizes claimants over the age of 55 as "persons of advanced age."